IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 13-cr-168-EGS-2 |
| v. | ) | |
| | ) | |
| BINH TANG VO | ) | |

**BING TANG VO'S BRIEF IN SUPPORT OF HIS PROPOSED REMEDY FOR THE GOVERNMENT'S ABUSE OF RULE 17 TRIAL SUBPOENAS**

On January 15, 2015, this Court found that the government improperly issued Rule 17 trial subpoenas for jail calls in this case and invited both sides to brief a proposed remedy. See Dkts. 245, 246. While continuing to review the discovery in this case, Mr. Vo discovered that—contrary to the government's representations in open court at the December 15, 2014, hearing on the motion to quash—the government had issued other improper subpoenas *duces tecum* under Rule 17. Specifically, on June 23, 2014, it issued a Rule 17 subpoena *duces tecum* to Black Oak Computers, and on July 15, 2014, it issued a Rule 17 subpoena *duces tecum* to AT&T. After Mr. Vo filed a motion requesting an extension of time in which to file the instant document and asking the Court to order the government to disclose any other Rule 17 subpoenas it issued, the government disclosed a third such subpoena—to the City of Albany, on August 13, 2014, requesting records related to Michael Sestak. **Thus, rather than the three improper subpoenas the Court knew about when it issued its Order calling for briefing on the remedy, there appear to have been twice that many.**[1]

[1] Due to the inartful drafting of Mr. Vo's motion to join Ms. Vo's and Ms. Huynh's motions to quash, the Court appears not to have recognized that Mr. Vo was also moving to quash the subpoena for *his own* jail calls. See Memorandum Opinion at 2 n.2 ("Similar subpoenas were served regarding Binh Vo and Michael Sestak, but they are not the subject of the pending motions."). Mr. Vo apologizes for the lack of clarity in his motion and respectfully requests that this Court quash the subpoena for Mr. Vo's jail calls as well.

"The subpoena power is a substantial delegation of authority ... and those who invoke it have a grave responsibility to ensure it is not abused." United States v. Candelario-Santana, 929 F. Supp. 2d 24, 27 (D.P.R. 2013) (quoting Theofel v. Farey–Jones, 359 F.3d 1066, 1074 (9th Cir. 2004)) (imposing severe sanctions on the government, including disqualifying one of the assigned prosecutors and referring her to the Office of Professional Responsibility, for abusing trial subpoenas by using them to summon witnesses to the U.S. Attorney's Office solely for trial preparation). In this case, as in Candelario-Santana, "despite its inherent advantage under Rule 17 and the clear directive of case law, the government abused its discretionary authority to gain a tactical advantage over the defense." Id. It abused that authority no fewer than *six times*—and three of those times would never have been discovered, *even after this Court's order*, had Mr. Vo himself not rooted two of them out. The government did all this in contravention not only of Rule 17 itself, but also of the well-established four-part test for pretrial production outlined in a foundational 40-year-old Supreme Court case. See United States v. Nixon, 418 U.S. 683, 699-700 (1974) ("[T]o require production prior to trial, the moving party must show: (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'").

The most obvious remedy for the government's actions would be to suppress the evidence obtained by the subpoenas. But Mr. Vo respectfully suggests that such a remedy would not go far enough. This kind of abuse of the subpoena power is routine in the U.S. Attorney's Office. As undersigned counsel stated at the hearing, prosecutors routinely "order the jail calls"

by emailing their paralegals, and the standard cover letter in that Office "invites" the jail to comply at an earlier date—whether it is a Grand Jury subpoena or a trial subpoena. Little if any thought goes into the legality of such requests. If this practice is to stop, the entire U.S. Attorney's Office—not just these few prosecutors—will have to *notice* what the Court does here. Simply suppressing the evidence is a one-time-only remedy that will likely not reverberate beyond the confines of the instant case. Mr. Vo respectfully suggests that a more severe sanction is needed. He proposes the following remedies:

1. An order precluding Hong Vo or Truc Huynh from testifying for the government at trial;

2. An order forbidding the government (but not Mr. Vo) from using the jail calls and any evidence obtained from them;

3. An order suppressing all evidence obtained from, and any testimony about, Black Oak Computers, including evidence obtained from Black Oak Computers before the June 23, 2014, subpoena was issued;

4. An order suppressing all evidence obtained from the July 15, 2014, AT&T subpoena, as well as any evidence related to that phone number, including testimony from the subscriber itself; and

5. A hearing to determine what other evidence the government may have obtained as the fruit of its improper use of these subpoenas.

Mr. Vo recognizes that the suppression of this evidence is a significant remedy. But any lesser remedy can be too easily ignored by the government. If the remedy here only prevents the government from using the documents it obtained through the improper subpoenas, then other prosecutors will have little reason to change their conduct. Prosecutors considering whether to issue a subpoena *duces tecum* will assume that, at worst, they will lose access to the documents they improperly subpoenaed, and at best they will simply get what they want.

There is every reason to believe that, barring an extraordinary remedy, the government will continue to abuse Rule 17 subpoenas and "invite" early compliance with them. Undersigned

counsel suspects that the Memorandum Opinion has not been widely circulated at the U.S. Attorney's Office and that no one but these prosecutors and their immediate supervisors have been instructed to review it. If that is the case, then these abuses—which are ***absolutely routine*** at the U.S. Attorney's Office—will continue unabated until the next criminal defendant thinks to raise this issue.

"Misconduct of this kind strikes at the foundation of the court's integrity and its impartiality." Candelario-Santana, 929 F. Supp. 2d at 30. In this case, the government repeatedly abused its Rule 17 subpoena power.[2] Unless it is forced to pay a serious price for its actions, no one will notice, and nothing will change. For these reasons, Mr. Vo respectfully asks this Court to impose the significant sanctions outlined above, which will help ensure that the government does not treat this as a harmless, and easily repeatable, error.

Respectfully submitted,
/s/
Justin Dillon
DC Bar No. 502322
Rebecca S. LeGrand
D.C. Bar No. 493918
Kaiser, LeGrand & Dillon PLLC
1400 Eye St. NW, Suite 525
Washington, DC 20005
jdillon@kaiserlegrand.com
rlegrand@kaiserlegrand.com
(202) 640-2850

February 9, 2015

[2] As Mr. Vo will demonstrate with his motions to suppress that will be filed on or before the February 13 deadline, the government engaged in equally flagrant abuse of a different kind in its efforts to obtain computer and email evidence in this case.

**CERTIFICATE OF SERVICE**

I hereby certify that on this 9th day of February, 2015, I filed the foregoing with the Court's CM/ECF system, thereby causing it to be sent to all counsel of record for this case.

_/s/_________________
Justin Dillon