UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | 13 Cr. 168-04 (EGS) |
| | : | |
| V. | : | |
| HONG VO | : | |
| Defendant. | : | |

**MEMORANDUM BY HONG VO AND TRUC HUYNH**
**CONCERNING SANCTIONS FOR GOVERNMENT MISCONDUCT**

**INTRODUCTION**

Hong Vo and Truc Huynh respectfully submit this memorandum to the Court concerning the appropriate sanctions for the Government's misconduct in connection with the improper issuance of subpoenas pursuant to Federal Rule of Criminal Procedure 17(c). For the reasons set forth herein, the defendants believe that merely quashing the subpoenas will not provide a complete remedy in this case. In order to eliminate the possibility of the Government taking advantage of the information it improperly obtained from the early return of the subpoenaed phone calls, this Court should also preclude the Government from calling Hong Vo and/or Truc Huynh as witnesses at the upcoming trial.

The defense does not ask for this sanction lightly, but believes it is justified by the totality of circumstances presented in this case. These include: (1) the misconduct surrounding the subpoenas issued to the D.C. jail, which were undertaken for both an improper purpose and by improper means; (2) the Government's inexcusable misrepresentation in open Court unequivocally denying that other subpoenas were ordered returnable before trial, which was made after undersigned counsel specifically asked the prosecutors in writing whether any such subpoenas had issued; and (3) the need to make sure that the U.S. Attorney's Office - and the

1

public - understand that there will be appropriate consequences when federal prosecutors act in a manner patently inconsistent with the fair administration of justice.

The requested sanction is not a reward to the defense; indeed, the Government indicted this case without the testimony of either Hong Vo or Truc Huynh and the Government can proceed without them to trial. Finally, if the Government should respond with a continuing insistence in the good faith nature of its actions as a defense to the request for sanctions, these defendants request that the Court conduct a full evidentiary on this issue. See Franks v. Delaware, 438 U.S. 154 (1978). Professor Wigmore's often quoted aphorism that cross-examination is "beyond any doubt the greatest legal engine ever invented for the discovery of truth," applies with particular force in this case.

## RELEVANT FACTUAL BACKGROUND

Movants Hong Vo and Truc Huynh are co-defendants in this case, which is currently pending trial with defendant Binh Vo. Hong Vo was arrested in Denver, Colorado on May 8, 2013 on a criminal complaint issued by this Court. She was thereafter brought to Washington, D.C. in custody and charged with one count of conspiracy to defraud the United States in violation of 18 U.S. Code Section 371. See DE 51. The affidavit in support of the arrest warrant recites in laborious detail the fact that Ms. Vo was the subscriber of what is referred to as a "Virtual Private Network" ("VPN"), which was hosted by a California company called Black Oak Computers, Inc. This VPN is essentially a limited access Internet account, which the Government claimed was used to facilitate the alleged visa fraud conspiracy. See DE 1-1 at pp. 6-9. Hong Vo ultimately pled guilty and was sentenced by Judge Bates to seven and a half months of incarceration and two and a half months of home detention. Defendant Hong Vo never debriefed or met with the prosecutors assigned to this case. Since her release from custody she

has enrolled in an advanced computer class in New York City and is seeking full time employment.

Truc Huynh was also arrested on May 8, 2013 in Denver, Colorado, but she was not initially charged as a co-conspirator in this matter. Rather, the prosecution issued a "material witness warrant" for her arrest. See Doc 1, Case no. 13-mj-1074 (D. Colo.). She was taken into custody and transported to Washington, D.C. When she refused to cooperate with the prosecutors, her status changed immediately to "co-defendant," with the issuance of an arrest warrant on June 3, 2013. See DE 2, case 13-mj-00463 (D.C)(warrant and affidavit in support thereof). Thereafter Ms. Huynh met with the prosecutors twice and debriefed pursuant to a proffer agreement. Although she ultimately pled guilty, the Government announced that they did not believe her version of events and refused to give her any sentence reduction for cooperation.[1] Judge Bates imposed a sentence of sixteen months, but on May 2, 2014 - shortly before the completion of her term of incarceration - the Government asked the Court to authorize her deposition pursuant to Fed. R. Crim. Pro. 15 and to issue a bench warrant to act as a detainer against her.

Defendant Huynh objected to the deposition, noting *inter alia*, that because of the change in defense counsel for co-defendant Binh Vo, the deposition could not take place immediately and that she would be incarcerated past her release date of approximately July 4, 2014. In the interests of fairness, the defendant requested that the Government obtain a "deferred action" to permit her to live in the community if the deposition was continued. The Government responded to this request by representing in a pleading filed on June 30, 2014 that the State Department's Bureau of Diplomatic Security (the law enforcement agency investigating this case) would

---

[1] The prosecutors would later explain that she "minimized her role in the conspiracy and the roles and activities of certain individuals. This is common." See DE 168 at p.2.

request a deferred action. The Government noted, however, that the "grant of such relief was wholly within the "discretion of the Department of Homeland Security." See DE 175 at pp. 2-3.

It is unclear to undersigned counsel what efforts – if any – were made by the Government to obtain a deferred action for Ms. Huynh, but she remained incarcerated until a status hearing held three and a half months later on October 14, 2014.[2] At that proceeding, this Court explained that it was concerned about Ms. Huynh's continued incarceration. In response to the Government's protestations that the matter was out of their hands, this Court advised the prosecutors assigned to the case that there was but "one Government" and that they needed to take immediate steps to release Ms. Huynh from continued confinement. Despite their earlier claims of impotence with respect to matters involving deferred actions, two days later, the immigration detainer against Ms. Huynh was removed by the Department of Homeland Security. See DE 226. Ms. Huynh continues to live in the Washington, D.C. area pending the trial of Binh Vo, currently scheduled to begin on April 15, 2015.

## LEGAL ANALYSIS

**1. This Court Has Authority To Preclude The Government From Calling Hong Vo or Truc Huynh As A Witness**

After extensive legal submissions and oral argument this Court issued an Order on January 15, 2015 granting the motion to quash the subpoenas issued by the United States Attorney's Office for the District of Columbia for recorded phone calls and visitation logs for Hong Vo and Truc Huynh during their incarceration at the D.C. jail. See DE 246. The question pending before the Court concerns the appropriate remedy to impose for the Government's actions.

---

[2] On July 14, 2014, unbeknownst to defense counsel – or the Court – the Government issued Rule 17(c) subpoenas seeking all recorded jail phone calls and visitation logs for Hong Vo and Truc Huynh. At the time the subpoenas were issued, the deposition for Ms. Huynh was scheduled to commence on August 14, 2014, but was subsequently cancelled.

4

As an initial matter, suppression of evidence can be an appropriate remedy in response to prosecutorial misconduct. See United States v. Hammad, 858 F.2d 834, 842 (2d Cir. 1988)(district court may order suppression of statement obtained by prosecutor from represented person in violation of disciplinary rules). The courts have noted that this remedy is consistent with the federal judiciary's "supervisory powers to protect" the integrity of court proceedings and that the "appropriateness of exclusion as a sanction for prosecutor's ethical violations is to be determined on a case by case basis. United States v. Acosta, 111 F.Supp.2d 1082, 1096 (E.D. Wisc. 2000).

Moreover, the sanction of suppression informs the Government in a very specific way that such misconduct will not be accepted in the future. As noted by the Third Circuit in a case involving prosecutorial misconduct before the grand jury:

> we think that the prospect of cases lost because of attorney misconduct is likely to produce a sharp improvement in the procedures adopted by United States Attorneys to control attorney conduct before the grand jury. Certainly the constant flow of cases to this court involving prosecutorial misconduct before petit juries demonstrates that judicial "tongue clicking" and adjurations as to the "better practice" are likely to have little impact on the problem.

United States v. Serubo, 604 F.2d 807, 817-18 (3rd Cir. 1979).

In this case, an analysis of the prosecutors' conduct before, during, and after the issuance of the subpoenas demonstrates that the sanction requested by these defendants is appropriate.

**2. The Motive And Means Used To Obtain The Recorded Jail Conversations Were Improper**

Any consideration of an appropriate sanction in this case must focus on the Government's motivation for obtaining the jail phone calls and the manner in which they sought to accomplish that goal.

From its inception, the Government's goal in this case was to improperly obtain

information to impeach its own witnesses. The Government has represented in pleadings filed in this case that "it appears likely that Ms. Vo and Ms. Huynh will be uncooperative witnesses at the trial of their brother and cousin." See DE 212 at p.6, fn. 7. Yet, the Government chose – for its own reasons - to serve trial subpoenas on both Hong Vo and Truc Huynh.[3]

The conclusion that Hong Vo would be uncooperative if called as a Government witness is of course unsupported by anything more than sheer speculation on the part of the prosecution as they have never spoken with her. As to Ms. Huynh, the Government's decision to call a witness that they do not believe was being truthful during proffer sessions seems potentially to run afoul of the rule that a prosecutor may not knowingly present false testimony to obtain a conviction. See, e.g., United States v. Agurs, 427 U.S. 97, 103 (1976).

What is clear beyond dispute, however, is that because of these concerns – and in order to obtain a tactical advantage against their own witnesses - the Government issued the subpoenas to the D.C. Jail. They did so despite that fact that even a cursory review of controlling caselaw demonstrates that a Rule 17(c) subpoena cannot be used for the purpose of obtaining impeachment material. See, e.g., United States v. Cuthbertson, 630 F.2d 139, 145-46 (3rd Cir. 1980). It is simply an impermissible use of a subpoena. Moreover, the Government had no good faith basis upon which to believe that even impeachable material would be found in the phone calls. Equally improper was the Government's demand for immediate production of the phone calls and visitor logs. The plain, clear, and precise language of Rule 17(c) provides that early production can only be ordered by the Court.

The Government's misconduct in this case was particularly egregious because Rule 17 authorizes the *ex parte* issuance of a trial subpoena. See United States v. Tomison, 969 F.Supp.

---

[3] Indeed, the Government was so intent on securing Hong Vo's attendance at trial, that rather than calling counsel to accept the subpoena, the prosecutors dispatched a process server to undersigned's personal residence, where Ms. Vo was living at the time.

587, 595 (E.D. Cal 1995). Rather than utilize this procedure and ask for permission to proceed, the prosecutors went behind the back of the defense and the Court, unilaterally serving the subpoena and unilaterally ordering early production of the materials. No policy of the U.S. Attorney's Office, no legal principle, and no fair reading of the plain language of Rule 17(c) or the numerous federal cases interpreting its meaning would authorize what the prosecution did in this case. Indeed, based upon the representations by the prosecutors in this case, the issuance of federal trial subpoenas with return dates prior to trial is an actual policy of the U.S. Attorney's Office. This cannot be countenanced. See United States v. Candelario-Santana, 929 F.Supp.2d 24 (D.P.R. 2013)(federal prosecutors improperly issued Rule 17(c) subpoenas to compel attendance of witnesses for pre-trial witness conferences; noting that "[m]isconduct of this magnitude has no place in this or any other federal court."). Unfortunately, there is more misconduct for the Court to consider.

2. **The Government's Continuing Misrepresentations Concerning Other Rule 17(c) Subpoenas**

During oral argument on the motions to quash held on December 15, 2014, this Court specifically asked the Government whether any other trial subpoenas had been issued with a demand for early production. The prosecutor's immediate and unequivocal response was as follows:

> For this record – for this case, no other subpoenas have gone out. I mean, the trial date wound up getting pushed off and we have not – we have not issued any other subpoenas duces tecum . . .

Tr. 12/15/14 at p. 90, lines 16-23.

It now appears that this representation was not accurate. On January 26, 2015, defense counsel filed a motion requesting additional time in which to submit recommendations as to potential sanctions. In preparation for that pleading, it became clear to counsel for defendant

Binh Vo that other Rule 17(c) trial subpoenas had in fact been issued by the Government. These included a subpoena directed to Black Oak Computers, Inc., the company that provided the Virtual Private Network that the Government noted was subscribed to by Hong Vo and used by the co-defendants to commit the charged conspiracy. See DE 248. The subpoena to Black Oak directed the return of certain business records "as soon as possible." See DE 248, Exh. 1.

In response to having been caught making misrepresentations to this Court, the prosecutors submitted a supplemental pleading to the Court in which they "humbly apologize[d]" for what it claimed was the result of an unidentified "internal miscommunication." DE 251 at p. 1.

It appears to undersigned counsel that this *mea culpa* was more the result of having been caught than any other factor. Moreover, the error is almost impossible to explain away as an internal miscommunication. In preparation for the pending oral argument on the motion to quash, undersigned counsel for Hong Vo became concerned about the possibility that in addition to the subpoenas for jail phone calls, other subpoenas had issued for materials relating to his client. Thus, on November 22, 2014, the undersigned counsel specifically wrote to the prosecutors assigned to this case and asked whether any other subpoenas had issued "seeking documents relating to," *inter alia*, Hong Vo.

On December 3, 2014, the prosecutors responded by noting that they had not served any other subpoenas relating to Hong Vo "at this time." Since the qualifier "at this time" was confusing, counsel for Hong Vo wrote to the prosecutors again on December 8, 2014 seeking clarification and again asking specifically whether any subpoenas had ever issued – whether "satisfied, pending, or withdrawn." This second letter remained unanswered. A copy of this correspondence is attached hereto as Exhibit A.

In fact, the Government did issue a subpoena to Black Oak Computers, seeking records that clearly pertain to Hong Vo, who was the subscriber to the VPN provided by the company. The Government was also clearly on notice prior to the oral argument that the question as to whether other subpoenas had issued was of interest to the defense. Moreover – and more importantly - it would seem obvious that this issue would arise during the hearing on December 15, 2014. When this Court inquired as to whether other subpoenas had issued, there was no consultation among the members of the prosecution team; there was not discussion as to whether other subpoenas had issued; the response was an unequivocal and immediate "no." At that moment, the prosecutor who signed the subpoena for the Black Oak records was sitting in the courtroom. The defense and this Court accepted the representation as accurate, but it was not.

Finally, the misrepresentation was not discovered and/or corrected by the Government before or after the oral argument or after the issuance of this Court's ruling on the motion to quash on January 15, 2015. The defense located the error and brought it to the Court's attention, with the resulting Government's "apology." At this point in the proceedings, it seems to the defense that enough is simply enough. As this Court noted in the investigation into prosecutorial misconduct in the aftermath of the Senator Stevens prosecution:

> Notwithstanding mounting evidence to the contrary, the Court accepted the prosecutors' representations and declined to dismiss the case or declare a mistrial (though the Court did take other steps to ameliorate the prejudice to the defense). Had the Court known of the misconduct and the information concealed by the government, as documented in the Schuelke Report, those decisions would have been different.

In Re Special Proceedings, 842 F.Supp.2d 232, (D.D.C. 2012). It is not necessary for this Court to wait until the bitter end of a case to impose sanctions as both a punishment for and a warning against future prosecutorial misconduct.

### 3. The Proposed Remedy Is Appropriate, Fair, And Necessary

As the result of its own misconduct the Government obtained copies of the jailhouse phone calls (and visitation logs) in August of 2014. These are materials which the prosecutors should either never have received or not received until after the trial began and the witnesses testified. The prosecutors have had months to analyze the contents of the calls made by Hong Vo and Truc Huynh (which this Court ordered translated into English), consider their contents, and use them in formulating a strategy for trial. Indeed, during at least one court appearance the prosecutors noted that the phone calls reflected a "power relationship" between and among the defendants in this case. It is impossible to know what other strategic information the prosecutors have gleaned from the calls.

Even if the calls themselves are suppressed, the information contained in them remains in the collective possession of the prosecution team in this case. That information could still be used in ways that would be totally obscured from the defense and the court if the Government is permitted to call Hong Vo and/or Truc Huynh as witnesses during its case in chief. Any other remedy short of preclusion would "effectively allow the Government to profit from its own misdeeds." United States v. Cornejo, 1996 WL 107271 (N.D. Cal.)(dismissing indictment with prejudice as the result of prosecutorial misconduct when Government had preview of defense strategy at original trial).

The Government returned an Indictment and a Superseding Indictment in this case without the testimony of either Hong Vo or Truc Huynh. If this Court enters an Order preventing the Government from using their testimony at trial it will not preclude the Government from using any of the evidence it independently obtained during the extensive grand jury investigation of this case. It will, however, ensure that the Government does not take advantage of the

information it obtained pursuant to the improperly issued subpoenas. The interests of justice will be furthered by this remedy and the message that it will send to: (1) the prosecutors in this case; (2) the management at the U.S. Attorney's Office for the District of Columbia; and (3) the public at large.

## CONCLUSION

For all these reasons, Hong Vo and Truc Huynh request that this Court preclude the Government from calling them as witnesses at trial.

Respectfully submitted,

*Robert Feitel*

_____

Robert Feitel, Esquire
Law Office of Robert Feitel
1712 N Street, N.W.
Washington, D.C. 20036
D.C. Bar No. 366673
202-450-6133 (office)
202-255-6637 (cellular)
RF@RFeitelLaw.com

Counsel for Hong Vo


Robert A. Spelke
Law Office of Robert A. Spelke
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
DC Bar No. 393785
202- 518-1088 (office)

Counsel for Truc Huynh

## CERTIFICATE OF SERVICE

      I hereby certify that a copy of the foregoing Reply was sent, via the Electronic Filing System to government counsel and all other counsel of record via the Electronic Case Filing System, this day 9th day of February, 2015.

*Robert Feitel*

_____
Robert Feitel